By the Court.

Anne Daniel was tó take the negro and horse, if Elizabeth Harris should depart this life “ without heir lawfully begotten of her body.” This is in substance a ■limitation over after a dying without issue. The limitation is too remote: 1 he absolute property vested in the first Legatee, and the demurrer must be overruled. — (a)

 If this decision be correct, it would seem that in construing’ devises, the court will not look to the subject matter of the dev soasa circumstance from which the intention of the testator may be inferred; for it is evident ’hat in limitations of interests in individual animals, whose period ol'existence is shorter than that of man, the limitations over must *43 vest, if at all, within the period of a life or Uves in being and twenty-one years afterward,). In construing (h-vist'¡¡, the object of 1 he court is to ascertain the intenrion of tljio testator, .mb if legal j to give it effect. In inferring this intention from circumstances, where it is not plainly ett-pressed, courts me governed by certain technical rules, which have-been est.-.bltshccl for the pm pose of aiding the c iurt to find out the intention. Amonte these rules, one wlt.ch seems t a have the most extensive influence is this, “ that wherever an executory devise is limited to take effect, after a dying -withovi heirs or -without issue, subject to no other restriction, tin limitation is torn ; In cause m such cutes the tes’ator will be presumed it> h ve intended to iviuh r the estate U'-alienabh- until there should be a general indefinite failure of issue.” This rule, however, was found in its application often to defeat the intention of testators, and some exceptions vete rotule to it: one in particular, that if the subject, matter of the di vise was real estate, and the devise made in words which created an estate-tail by implication, the limitation over shall be void; but if of personal estate, the court will consider the intention of the testator, and support the limitation over, if there be the most trifling circumstance to shew the inten’ ion to be legal. This exception is founded upon the fact, that in construing devises, the court will look to the subject matter of the devise. In the above case, the bequest to Elizabeth Harris is in words, which if applied to a freehold, would not create an express estate-tail ; they create such estate by implication only. There is not such a limitation as must, in its legal operation, constitute an estate-tail. Then it is open to the court to consider the inte; tion of the testatrix; 1 Term. Itep. 593. And if we look to the subje ,t matter of the bequest, can we doubt the intention ? When the testatr-x limits over a negro man slave "after a dying without heir of the body of Elizabeth Harris,” can she be supposed to have intended that this limitation should not vest until a longer period than a life in being and twenty-one years afterwards* when the negro could not by possibility live so long 7 The same question may be asked more emphatically as to “ a horse.” If the intention of a tes« tator is to be collected in the language of Wr. Ju-tice Wilmot, 3 Bum 1533, “ from the whole of the will, ex viscenbus testamenti,” and circum *44 stances are to he looked to for this purpose, does not the subject matter of the devise often constitute one of the most decisive ? It would seem strange, that in construing deyises the court would take notice whether the estate bo real or personal, and give a different construction as it might be the one or the other, and yet refuse to take notice that the personal estate is of such kind that it cannot-by possibility of nature be in esse after the period of a life in being and twenty-one years afterwards. In the above case of “Mathews, adm’r, &c. vs. Daniel, Executor, &c.” the court must have founded their judgment upon one-of two-grounds: first, That the technical rules of construction forbad them-from considering the intention of the testatrix; or secondly,' That in cases open for considering the intention, the subject matter of the devise will not be looked to as a circumstance from which the intention may be inferred. It is not probable their judgment was rested upon the first ground ; for the technical rule is, “ that where there is an express limitation of a ehatlel by words, which if applied to a freehold, would create an express estate-tail, the whole interest vests absolutely in the first taker, and a limitation over of such a chattel is too remote to take effect; but where there is no such express legal limitation, the court mill consider the inten *45 tion of the testator." Lyde vs. Lyde, 1 Term Rep. 593.—In the above case, there is no such express legal limitation ; the words, if applied to a freehold, would create an estate-tail by implication on¡y, (he technical rule therefore left the court at liberty to consider the intention of the testatrix, to reject the artificial and 'rchnical sense of the words “ dying without heir lawfully begotten of her body,” and of using those words in their natural meaning and for that purpose which is in favor of common sense; and for using those words in this meaning and for this purpose, Lord Ch. Jus. Wilmot observes, in the case of líeily and Towler, the most trifling- circumstance is sufficient in all cases where the court is at liberty to consider the intention of the testator. In the selection of oircumstances to ascertain the meaning of the'testator, no reason can bé assigned why the subject matter of the devise, which in many instances 5.4 tapie. indication than any other circumstance, should be excluded.